# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WATER FOR COMMERCE FUND MANAGEMENT, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>REFRESHING USA, LLC., *et al.*,<br><br>    Defendants. | Case No. 24-2368-DDC-BGS |

## ORDER ON RENEWED MOTION FOR APPOINTMENT OF RECEIVER

Now before the Court is the Renewed Motion for Appointment of Receiver filed by Plaintiff Water for Commerce Fund Management, LLC (hereinafter "Plaintiff" or "Lender"). (Doc. 27.) Plaintiff contends the appointment of a Receiver is necessary to "keep, manage, and protect, and exercise the power of sale over, certain vending machines, vending machine inventory, and other collateral in the possession of the named Defendants Refreshing Arizona, LLC, Refreshing California, L.L.C., Refreshing Carolinas, L.L.C., Refreshing Colorado, L.L.C., Refreshing DC, L.L.C., Refreshing Florida, L.L.C., Refreshing Georgia, L.L.C., Refreshing Great Lakes, L.L.C., Refreshing Las Vegas, L.L.C., Valley Vending, L.L.C., Refreshing New England, L.L.C., Refreshing New Mexico, L.L.C., Refreshing Texas, L.L.C., Refreshing Washington L.L.C., and Vendpro, L.L.C. (collectively, the "Receivership Defendants").[1]

Plaintiff asks that the receivership remain pending until "the disposition of this action, subject to the power of sale to liquidate the collateral in the Receiver's business judgment." (Doc.

---

[1] As discussed in the factual background section, *infra*, a prior motion requesting appointment of a receiver was initially filed on August 20, 2024. (Doc. 4.) That motion included a request for relief against Defendant Refreshing USA, LLC ("Refreshing USA") in addition to the Receivership Defendants at issue in this motion. Plaintiff's renewed motion does not seek relief against Refreshing USA, LLC, as an involuntary bankruptcy petition was filed against Refreshing USA in the Southern District of Texas Bankruptcy Court on August 27, 2024. (Case No. 24-33919.)

28, at 1.) Plaintiff asserts that the appointment of a Receiver is necessary to "protect [Plaintiff's] Collateral, which consists largely of vending machines, the inventory used to stock the vending machines, and the revenue generated by the vending machine business." (*Id.*, at 2.)

According to Plaintiff, the Receivership Defendants, together with affiliate Refreshing USA (Refreshing USA and Receivership Defendants collectively referred to as "Borrowers"),

> have failed to make required loan payments since the payment that was due in December 2023, and [Plaintiff] is informed and, therefore, believes that Borrowers have been neglecting responsibility for replenishing inventory and servicing the machines resulting in waste and potential value deterioration of [Plaintiff's] Collateral. Further exacerbating matters, Borrowers' principal and guarantor of the indebtedness owed to [Plaintiff], Ryan Wear ("Mr. Wear"), has been accused of orchestrating a massive Ponzi scheme involving the misappropriation of more than $100 million in bond proceeds. While the allegations focus on fund misappropriation involving funds and assets of other Wear-controlled entities, the allegations implicate the use of the Borrowers' assets ([Plaintiff's] Collateral) to advance Wear's unlawful activities.

(*Id.*) Plaintiff continues that "a recent filing in the involuntary bankruptcy case of Refreshing USA reflects ongoing irresponsible conduct by Mr. Wear that supports the immediate need for a receiver to prevent continued deterioration and waste of [Plaintiff's] Collateral." (*Id.*) The collateral consists of, among other things, various vending machines, equipment, and inventory located throughout the country (hereinafter "the collateral").

Because no Defendants have answered Plaintiff's Complaint or even entered an appearance in this case, as discussed *infra*, no opposition has been filed to the motion. For the reasons set forth herein, and after substantive analysis of Plaintiff's arguments and authority, Plaintiff's motion (Doc. 27) is **GRANTED**.

I.   **FACTUAL BACKGROUND.**[2]

---

[2] Because Defendants' time to answer the Complaint and respond to this motion has expired, the Court will consider the factual allegations contained in Plaintiff's supporting memorandum to be admitted as uncontested for purposes of this motion. (*See* Doc. 28, at 2-8.)

2

A.      **Pre-litigation Background.**

On March 31, 2023, Plaintiff and each of the Borrowers entered into a Loan Agreement that provided in part that Plaintiff would make certain revolving loans and advances to Borrowers (the "Revolving Loans") up to a total of ten million dollars ($10,000,000.00). Ryan Wear executed the Loan Agreement as the Managing Member of each of the Borrowers. As security for the Revolving Loans, the Loan Agreement stated that Borrowers would grant Plaintiff a security interest in the collateral.

On December 8, 2023, Plaintiff sent Borrowers correspondence informing them that they were in violation of Sections 6.1 and 6.2 of the Loan Agreement, with these defaults constituting "Events of Default" under the Loan Agreement ("first demand letter"). Plaintiff informed Borrowers that interest would accrue at the default rate stated in the Loan Agreement.

The Loan Agreement also requires Borrowers to make monthly interest payments, but they have not done so since December 2023. They have failed to provide the "Borrowing Base Certificates" since that time, as required under the agreement. They have failed to provide the required monthly financial statements to Plaintiff since September 2023. Further, they have not provided Plaintiff with the required copies of their federal tax returns. Plaintiff sent Borrowers correspondence dated July 30, 2024 (the "second demand letter") informing them that they were in violation of these requirements of the Loan Agreement. As a result of all of these defaults, Plaintiff accelerated the amounts due and owing under the Loan Agreement and demanded payment.

On July 3, 2024, 3|5|2 Capital GP, L.L.C. (the "New York Plaintiff") filed suit against Wear, with other defendants. According to Plaintiff, this lawsuit alleged that Wear "engaged in a scheme to misappropriate funds by requesting that the New York Plaintiff advance funds to pay for self-service water stations to be owned by Wear-controlled entities, falsifying purchase orders and invoices to provide 'proof' that the equipment was purchased, and then using the funds advanced to

3

pay franchisees rather than pay for the equipment." (Doc. 28, at 4.) *3|5|2 Capital GP LLC v. Ryan Wear, et al.*, S. D. N.Y., Case No. 24-5102 (the "New York action"). Notably, the New York Plaintiff alleges that revenue generated by Plaintiff's collateral was reported as revenue generated by other Wear-controlled entities. (Case No. 24-5102, Complaint at ¶¶ 138, 151.)

Plaintiff contends that "[g]iven the allegations in the New York Action, [it] remains concerned about the representations made by Borrowers to [Plaintiff] regarding the Collateral that was allegedly involved tangentially in the fraudulent scheme." (Doc. 28, at 5; Doc. 1, at ¶¶ 59-61.) Plaintiff also "believes that Borrowers are not providing necessary repairs, restocking inventory, and providing needed inspections, which in turn negatively impacts the value of [the] Collateral." (*Id*; *see also* Doc. 1, at ¶ 63.)

Plaintiff is also concerned that because the subject vending machines are typically installed on property belonging to third-party landowners, "there is a risk that these property owners will simply remove the vending machines and abandon them in the event that they are not maintained, which results in further diminution in the value of [Plaintiff's] Collateral through waste, vandalism, and/or damage." (*Id*.; *see also* Doc. 1, at ¶ 64.) Plaintiff does not have the ability to access the machines or their card readers because Plaintiff does not have possession of the keys to the machines. This access is necessary to service, replenish, take possession of, and potentially liquidate the machines.

Plaintiff thus initiated filed this lawsuit on August 19, 2024. (Doc. 1.) Plaintiff's initial motion to appoint a receiver (Doc. 4, "initial motion") was filed the next day. On September 4, 2024, Plaintiff's counsel sent an email correspondence to Ryan Wear attaching the Verified Complaint, Summons, and Plaintiff's initial Motion for Appointment of Receiver.[3] That email

---

[3] On October 31, 2024, Plaintiff's counsel forwarded to the Court this email correspondence to Ryan Wear. Plaintiff's counsel stated he could not find anything indicating that the present, renewed motion (Doc. 27) had been forwarded to Defendants.

acknowledged a telephone conference between Wear and Plaintiff's counsel, during which Wear agreed to accept service on behalf of Refreshing Colorado and Refreshing New England, both of which are Defendants in the present case. The email from Plaintiff's counsel also summarized the fact Wear was "looking to potentially retain counsel for the defendant entities as soon as this afternoon. We asked that you please have the lawyer retained for the entities reach out to us tonight or tomorrow morning to discuss whether the entities that are not included in the involuntary bankruptcies will consent to the receivership." Plaintiff's counsel stressed to Wear that "time is of the essence for my client so we need to hear back by tomorrow morning or Lender will seek to re-file the receiver motion with respect to the entities not in bankruptcy and set it for a hearing." Plaintiff's counsel then invited Wear to raise any other issues he wished to discuss. Despite these communications, Defendants have made no effort to appear or participate in the present litigation.

      **B.**    **Events Since Filing of Action.**

Following a telephone hearing on August 29, 2024, this undersigned Magistrate Judge denied the initial motion to appoint a receiver without prejudice to refiling, based on Plaintiff's failure to meet the statutory evidentiary requirements under K.S.A. 60-1304 for the entry of an *ex parte* order. Plaintiff's counsel was instructed to provide notice to Defendants and attempt to meet and confer with the Borrowers and/or their counsel prior to refiling the motion.

The next day, Plaintiff's counsel sent correspondence to Wear asking him to meet and confer. On September 4, 2024, Wear and Plaintiff's counsel spoke by telephone to discuss the request for relief. Wear indicated he was in the process of hiring legal representation and said he would respond to Plaintiff's counsel by the next business day. On September 5, 2024, Wear sent an email referencing "my lawyer, Rafael Zahralddin, from Lewis Brisbois." As of the filing of the present motion, neither Zahralddin nor Wear had communicated again with Plaintiff's counsel

regarding the requested appointment of a receiver. To date, no counsel has entered an appearance for any of the Defendants.

Wear did, however, inform Plaintiff's counsel that Defendant Refreshing USA was placed in an involuntary bankruptcy case. Plaintiff's counsel determined that an involuntary petition for Chapter 11 bankruptcy protection that was filed against Defendant Refreshing USA on August 27, 2024, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Texas Bankruptcy Court"), Case No. 24-33919 ("Refreshing USA Bankruptcy"). Two other affiliated entities who are not parties to this case – Water Station Management, LLC and Creative Technologies, LLC – are also the subjects of involuntary bankruptcy cases in the Texas Bankruptcy Court, Case Nos. 24-33924 and 24-33934.

Because of the involuntary stay resulting from the bankruptcy filing pursuant to 11 U.S.C. § 362(a), Plaintiff currently does not seek relief against Refreshing USA herein. However, none of the other Receivership Defendants are debtors (or alleged debtors) in bankruptcy proceedings. Thus, the automatic stay does not preclude Plaintiff from seeking and receiving relief against Defendants other than Refreshing USA.

On September 5, 2024, a motion was filed by Turning Point Strategic Advisors in the Refreshing USA Bankruptcy ( hereinafter "the Control Motion"). The Control Motion asks the Texas Bankruptcy Court to recognize Eric Camm, a principal with Turning Point, as the manager of Refreshing USA. According to Plaintiff, the Control Motion details Wear's relevant "history of unlawful, obstructionist, and irresponsible behavior," including the following:

> a. "Mr. Wear tracks machines in the field in a single 'Vending Management System' database created and maintained by Parlevel Systems, Inc. … Mr. Wear himself never identified the database – much less facilitate Receiver's access to it." Control Motion, at 7.
>
> b. "In late June, [Mr. Wear] instructed his lead salespersons to sell machines in the field so he could use the proceeds to make payroll and pay other expenses. … In mid-August, well into the receivership, Mr.

6

> Wear attempted to close a sale of 62 machines through Refreshing's subsidiary in Georgia." *Id.*, at 7-8.
>
> c. A Washington state court sound that "Mr. Wear has engaged in unfair and deceptive acts and practices both before and after the Receiver's appointment in a past and continuing violation of the [Washington Consumer Protection Act]. … In the last two months, and after Receiver's appointment, Wear in his capacity as Manager has caused Debtor Entities and their subsidiaries to sell machines constituting or traceable to property of the receivership estate in violation of the TRO, Appointing Order, and [Washington Receivership Statute] 7.60.110. … Further, and in spite of the Receiver's appointment, Mr. Wear in his capacity as Manager has continued to solicit new investors and new financing with offers to sell or encumber machines that are property of the receivership estate or traceable to property of the receivership estate. . . ."

(Doc. 28, at 7-8; Doc. 28-1, at 20-31, 322.)

The present (renewed) motion was filed on September 23, 2024. (Doc. 27.) Therein, Plaintiff generally argues that "a receiver is … necessary to protect and preserve the Collateral from waste, damage, and destruction." (Doc. 28, at 2.) A telephone hearing was held on October 16, 2024, wherein the undersigned Magistrate Judge directed Plaintiff's counsel to provide supplemental authority on several issues. Supplemental authority was provided by Plaintiff's counsel on October 23, 2024. (Doc. 36.) An in-person hearing on the motion was held on October 30, 2024, before the undersigned Magistrate Judge.

## II.     LEGAL ANALYSIS.

Plaintiff brings the present, renewed motion (Doc. 27) requesting the appointment of a receiver "to manage, protect, and preserve the Collateral because of the Borrowers' Defaults under the Loan Agreement and because of the risk of loss that [Plaintiff] may suffer in the event that a receiver is not appointed." (Doc. 28, at 8.) The Court will apply the relevant legal standard for the appointment of a receiver to the arguments raised by Plaintiff in its motion and by counsel at the October 30, 2024, hearing.

### A.     Legal Standard.

7

The appointment of a receiver is an extraordinary remedy and is normally limited to situations where fraud, waste, or irreparable injury are occurring. *See First Federal Savings & Loan Ass'n v. Moulds*, 202 Kan. 557, 561–62, 451 P.2d 215, 219–20 (1969); *Browning v. Blair*, 169 Kan. 139, 145, 218 P.2d 233, 238 (1950); *Gage v. First Fed. Sav. & Loan Ass'n of Hutchinson, Kan.*, 717 F. Supp. 745, 750 (D. Kan. 1989). It is within the Court's discretion to appoint a receiver. *Dreymoor Fertilizers Overseas Pte. Ltd. v. AV Agro, LLC*, No. 20-mc-0105-EFM-GEB, 2021 WL 5082288, at *1 (D. Kan. Nov. 2, 2021). Such an appointment requires "evidence that [doing so] is necessary to prevent fraud or to save the subject of the litigation from material injury or to rescue it from threatened destruction." *Delaware Ridge Homes Ass'n Inc. v. Maddy*, No. 122,061, 2021 WL 2387574, at *4 (Kan. Ct. App. 2021). A court may resort to appointment only "when there is no other adequate remedy available." *Id.* This is because "[t]he power to appoint a receiver is in derogation of the fundamental property right of a legal owner to the possession and improvement of his or her property because it involves a taking without an adjudication on the merits" *City of Mulvane v. Henderson*, 257 P.3d 1272, 1276 (Kan. Ct. App. 2011) (citing 65 Am.Jur.2d, Receivers § 10, p. 630).

Federal law governs the appointment of receivers. *Skipton v. RevHoney, Inc.*, No. 19-2682-JWB, 2020 WL 3545646, at *7 (D. Kan. 2020) (noting that the appointment of a receiver in a diversity case is a procedural matter governed by federal law) (citing *Myles v. Sapta*, Nos. 96-6374, 97-6023, 1998 WL 45494, at *3 (10th Cir. 1998)); *United States v. Montgomery*, 268 F. Supp. 787, 788-89 (D. Kan. 1967) (noting that because the action arose under federal law, federal law should apply when determining whether to appoint a receiver) (citing *United States v. View Crest Garden Apartments, Inc.*, 268 F.3d 380, 382 (9th Cir. 1959)). *See also* Fed. R. Civ. P. 66. While the Federal Rules of Civil Procedure apply to the appointment of receivers, the Rules do not provide the standard for courts to apply and do not set forth the relevant procedural mechanism. As such, the Court looks to Kansas law for the governing standard and procedure. Under Kansas law, "only in cases of greatest

emergency are courts warranted in restricting a business or property by the appointment of a receiver." *Delaware Ridge Homes Ass'n Inc. v. Maddy*, No. 122,061, 2021 WL 2387574, at *4 (Kan. Ct. App. 2021).

The procedure for appointing a receiver in Kansas is governed by Kan. Stat. Ann. §§ 60-1301-05. This procedure "involves both a pleading requirement for the party seeking appointment and limits *ex parte* appointments until the judge hears evidence sufficient to find 'immediate and irreparable' injury." *Board of Trustees v. Acme Investors and Jones Service, LLC*, 2023 WL 6516412, at *3 (D. Kan. Oct. 5, 2023) (citing *Hutton v. Rainbow Tower Assocs.*, 601 P.2d 665, 668 (Kan. 1979). The relevant statute governing *ex parte* appointments provides:

> A receiver shall not be appointed unless: (a) The petition or application for appointment specifies, to the extent known to the petitioner or applicant, the general character and probable value of the property, business or business interest for which the appointment is sought, and, if real property is involved, the estimated annual income therefrom; (b) notice and an opportunity to be heard is given to the interested parties, including any person or persons known to be in possession of all or any part of such property, business or business interest, unless the judge shall, after the introduction of evidence and a record of the proceeding is made, make a finding that immediate and irreparable injury is likely to result, and shall set forth in the order the probable nature of such immediate and irreparable injury.

Kan. Stat. Ann. § 60-1304.

The *Dreymoor* court considered the following factors in a motion for appointment of a receiver that was not conducted *ex parte*: "(1) the existence of a valid claim by the moving party; (2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of available legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more harm than good." 2021 WL 5082288, at *1 (citing *LPP Mortg. Ltd. v. Worldwide Christian Aid, Inc.*, No. 14-0367-RB/CEG, 2014 WL 12495345, at *3 (internal citations omitted).

9

Defendants, while served with the Complaint and aware of Plaintiff's original request for a receiver (Doc. 4)[4], have not entered an appearance in this case, have not answered Plaintiff's Complaint, and have not responded to Plaintiff's request for a receiver. Because of Defendants' choice to not be involved in this process, Plaintiff argues its request to the Court should not be considered as *ex parte*.

The Latin term "*ex parte*" is defined as "'[o]n one side only; by or for one party; done for, in behalf of, or on the application of one party only.'" *McCloud v. The Bd of Directors of Geary Community Hosp.*, No. 06-1002-MLB-DWB, 2006 WL 2375614, at *3 (quoting BLACK'S LAW DICTIONARY (Fifth Ed.)). Plaintiff has failed to provide the Court with authority to hold that this motion – before the Court at Plaintiff's request and with no Defendant entered or represented in the case – is anything but *ex parte*. For the sake of this motion, the Court will, however, analyze Plaintiff's request under the standards for both an *ex parte* motion (immediate and irreparable injury) and a non-*ex parte* motion (the *Dreymoor* factors).

Plaintiff also argues that, because no opposition to the motion has been filed, it should be granted as uncontested pursuant to D. Kan. R. 7.1(c). Rather than engage in legal analysis as to whether the motion should be decided on technical grounds, the Court will analyze Plaintiff's arguments on their substantive merits.

**B.     Application of Standards to Plaintiff's Request.**

Based on the information provided in Plaintiff's briefing and as presented at the October 30, 2024, hearing, the Court finds there is a valid basis to appoint a receiver in this instance. Plaintiff has established the factors necessary for the *ex parte* appointment of a receiver. *See Acme Investors*,

---

[4] As indicated above, Plaintiff's counsel emailed Ryan Wear on September 4, 2024, forwarding Wear the Verified Complaint, Summons, and Plaintiff's original Motion for Appointment of Counsel (filed August 20, 2024). (*Supra.*, n.3.) There is no indication the present, renewed motion (Doc. 27) was forwarded to Defendants.

10

2023 WL 6516412, at *3, as well as the *Dreymoor* factors (non-*ex parte* appointment), 2021 WL 5082288, at *1. The Court will analyze the *ex parte* appointment factors prior to discussing the *Dreymoor* factors.

### 1.    Factors for an *ex parte* appointment.

The first factor for appointing a receiver *ex parte* is whether Plaintiff has established the "general character and probable value of the property." Plaintiff has identified the general character of the subject collateral as consisting "largely of vending machines, the inventory used to stock the vending machines, and the revenue generated by the vending machine business." (Doc. 28, at 2.) Plaintiff concedes it "is not aware of facts sufficient to establish the general value of the Collateral because the records that Borrowers have provided are either outdated or unreliable, given the allegations in the New York Action." (*Id.*, at 12 (citing Doc. 1, at ¶¶ 37-40).) Plaintiff continues, however, that "given that the revenue generated by, and constituting, [the] Collateral was used to mask the Ponzi scheme as alleged in the New York Action, and that revenue is certain to decline absent proper care and replenishment of the vending machines, appointment of a receiver is justified." (*Id.*) Plaintiff has adequately addressed this factor.

The next factor for an *ex parte* appointment under Kansas law is whether the circumstances present establish the existence of an immediate and irreparable injury. *Acme Investors*, 2023 WL 6516412, at *3 (internal citation omitted). Plaintiff asserts that Wear has made attempts to sell the collateral vending machines while also making efforts to assert new liens and impose junior liens on the collateral. Plaintiff has submitted the declaration of Richard Brennan, the former Director of Equipment Services of Refreshing USA, that Wear was using proceeds from the collateral to pay other debts, including payroll, and was potentially attempting to conceal or misrepresent the location of the collateral. (Doc. 28-1, at 390-94.)[5] Plaintiff also submits the declaration from Eric Camm, the

---

[5] Similar findings were made in the Washington state proceedings. (*See* Doc. 28-1, at 319-325.)

11

receiver in the Washington state case, which outlines much of the same behavior by Wear.  (*Id.*, at 326-331).

Plaintiff's counsel further contends that the collateral has been comingled, making it difficult for Defendant Refreshing USA to determine which collateral belongs to whom, even absent evidence of any malicious intent.  For instance Richard Brennan's declaration indicates that Wear was not being transparent about company assets and that the "database that tracks the location and cash flow of every machine in the field … does not tie individual machines to investors and lenders." (Doc. 28-1, at 392-93.)  The declaration of Eric Camm includes similar factual assertions. (*Id.*, at 328.)  Thus, Plaintiff argues, the appointment of a receiver is the only way for the Receivership Defendants to be actively represented in an effort to make sure their property is not lost or mistakenly assigned to another entity in the other pending Court proceedings in Texas and Washington.

Considering the above, the Court finds that Plaintiff has established the existence of irreparable and immediate harm.  Plaintiff has adequately established the factors necessary for the Court to appoint a receiver on an *ex parte* basis under Kansas law.  The Court will, however, also address the *Dreymoor* factors (relating to non-*ex parte* appointments) in the following section.

        2.        ***Dreymoor* factors.**

As stated above, the *Dreymoor* court considered the following factors in a motion for appointment of a receiver that was not conducted *ex parte*: "(1) the existence of a valid claim by the moving party; (2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of available legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more harm than good." 2021 WL 5082288, at *1 (citation omitted).  Plaintiff has adequately established all five factors.

As to the first *Dreymoor* factor, Plaintiff has established that the claim is valid pursuant to terms of loan agreement, guaranty, and default.  As mentioned in the factual background, *infra*, Plaintiff and the Borrowers entered into a Loan Agreement on March 31, 2023, that provided that Plaintiff would make certain revolving loans and advances to Borrowers (the "Revolving Loans") up to a total of ten million dollars ($10,000,000.00).  The Loan Agreement was executed by Wear as the Managing Member of each of the Borrowers.  As security for the Revolving Loans, the Loan Agreement stated that Borrowers would grant Plaintiff a security interest in the collateral.

Next, Plaintiff has adequately explained the probability of the occurrence of fraudulent conduct, which is the second *Dreymoor* factor.  For instance, a review of the filings from the Southern District of New York case indicates that the Defendant companies are implicated and that bond funds were improperly funneled into the companies.  The New York Plaintiff alleged that Wear "engaged in a scheme to  misappropriate funds by requesting that the New York Plaintiff advance funds to pay for self-service water stations to be owned by Wear-controlled entities, falsifying purchase orders and invoices to provide 'proof' that the equipment was purchased, and then using the funds advanced to pay franchisees rather than pay for the equipment."  (Doc. 28, at 4; *see  3|5|2 Capital GP LLC v. Ryan Wear, et al.*, S. D. N.Y., Case No. 24-5102.)  Notably, the New York Plaintiff alleges that revenue generated by Plaintiff's collateral was reported as revenue generated by other Wear-controlled entities.  (Case No. 24-5102, Complaint at ¶¶ 138, 151.)

 Plaintiff has also adequately established the third *Dreymoor* factor – imminent danger that the collateral property will be lost, concealed, or diminished in value if a receiver is not appointed.  The Court refers to its analysis of the existence of an "immediate and irreparable injury" as discussed in the preceding section.  *See Acme Investors*, 2023 WL 6516412, at *3.  This also relates to the prior factor – the probability of the occurrence of fraudulent conduct.

The next *Dreymoor* factors are the inadequacy of available legal remedies and the lack of a less drastic equitable remedy. Given the refusal by all of the Defendants to be involved in the present litigation as well as the ongoing related litigation in other jurisdictions, the Court sees few, if any, other alternatives for Plaintiff. Further, as in *Dreymoor*, Plaintiff herein is proposing a limited receivership. Thus, the powers bestowed upon the receiver will be limited by the Court's appointment Order, "and these limitations ensure that the least drastic equitable remedy will be imposed." *Dreymoor*, 2021 WL 5082288, at *2.

Plaintiff has also addressed the final *Dreymoor* factor by establishing the likelihood that appointment of a receiver will do more to protect the Defendants rather than harm them. In the present instance, Plaintiff is asking for the receivership for the express purpose of protecting the subject collateral. As to the related proceedings in Texas and Washington, jurisdiction of those actions extends only to the Defendants involved therein and the related assets. Further, Plaintiff is not a creditor of the entities involved in those bankruptcies, so there is no fiduciary duty owed to Plaintiff by the professionals appointed as receivers in those proceedings. Plaintiff contends this creates a risk that collateral will be misidentified in those proceedings, again even without malicious intent.

Plaintiff asserts that an appointed receiver herein will have fiduciary duties to Plaintiff and will be accountable to this Court. This, in turn, will benefit the Receivership Defendants by protecting and identifying the subject collateral. According to Plaintiff, because the Receivership Defendants have chosen to not take an active role in this case, they will actually be more protected if a receiver is appointed than if not. The potential for harm is imminent because, according to Plaintiff, the longer the appointment of a receiver is delayed, the more likely it is that collateral will be misidentified or misassigned to another party. " A receiver should be able to move the process

along so that the value of the [collateral] is not lost." *Id.*, at *3. As in *Dreymoor*, "[n]ot appointing a receiver" in the present case "would appear to do more harm than good." *Id.*

### C. Impact of Appointment of Receiver on Related Bankruptcy Stay.

As mentioned above, there is an involuntary stay involving Defendant Refreshing USA in the bankruptcy filing. Pursuant to 11 U.S.C. § 362(a)(1), a bankruptcy petition operates as a stay of, among other things, "the commencement or continuation ... of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

Counsel has asserted that Plaintiff is not seeking relief against Refreshing USA and that the appointed receiver will not take action as to assets of Refreshing USA.[6] Counsel has indicated that the term "Receivership Collateral" will be defined in the Receiver Order "to mean the personal property collateral defined within the Original Loan Agreement, owned by the Receivership Defendants." (Doc. 36, at 4.) As such, the Receiver Order will only apply "to personal property which is owned by the Receivership Defendants, and not Refreshing USA, Creative, or any other affiliate of the Receivership Defendants who may be debtors under Title 11 of the United States Code." (*Id.*)

Because none of the other Receivership Defendants are debtors in bankruptcy proceedings, the automatic stay does not preclude Plaintiff from seeking and receiving relief against Defendants other than Refreshing USA. The Tenth Circuit has held that "[w]hile § 362 extends the stay provisions of the Bankruptcy Code to the 'debtor,' … the stay provision does not extend to solvent codefendants of the debtor." *See Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24

---

[6] This assertion is to be included in the enumerated duties and limitations of the appointment Order that Plaintiff will be directed to submit to the Court.

F.3d 136, 141 (10th Cir. 1994); *see also Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984).

At the October 30, 2024, hearing, Plaintiff's counsel acknowledged the Court's concern that it is difficult to identify the location of these assets, who has possession of them, and which entities own them. Counsel asserted that Receiver would be directed take possession of collateral owned by Defendants other than Refreshing USA. According to counsel, as Plaintiff is currently situated (without a Receiver), it is much more difficult to make these determinations. Counsel also indicates that the Receiver should be directed to "identify" the collateral through a "review of the Receivership Defendants' books and records and, to the extent that there is a dispute or uncertainty as to whether certain personal property constitutes Receivership Collateral, the Receiver is directed to initiate the necessary legal proceedings in a court of competent jurisdiction to determine whether or not such assets should be turned over to the Receiver." (Doc. 36, at 4.)

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Receiver (Doc. 27) is **GRANTED**. The Order for Appointment of Receiver will be filed contemporaneously herewith.

**IT IS SO ORDERED**.

Dated November 21, 2024, at Wichita, Kansas.

/s/ BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge